**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **Joette Peroli,** *et al.*, | | **Case No. 1:19cv1755** |
| | **Plaintiffs,** | |
| -vs- | | **JUDGE PAMELA A. BARKER** |
| **County of Medina,** *et al.*, | | |
| | **Defendants** | **MEMORANDUM OPINION AND ORDER** |

Currently pending are the following Motions: (1) Plaintiffs Joette and Justin Peroli's Motion to Amend the First Amended Complaint to Name Medina County Sheriff Sgt. Todd Heckel as John Doe #1 (Doc. No. 49); and (2) Defendants City of Medina and Gregory Huber's Motion for Judgment on the Pleadings (Doc. No. 14.)  For the following reasons, Plaintiffs' Motion to Amend is DENIED and Defendants City of Medina and Gregory Huber's Motion for Judgment on the Pleadings is GRANTED with respect to Plaintiffs' federal claims.

## I.     Background

### A.      Factual Allegations

The Amended Complaint contains the following factual allegations.  Plaintiffs Joette and Justin Peroli are husband and wife.  (Doc. No. 4 at ¶ 35.)  In 2005, Plaintiff Joette Peroli (hereinafter "Ms. Peroli") was diagnosed with Post-Traumatic Stress Disorder ("PTSD").  (*Id*. at ¶ 37.)  Since that time, Ms. Peroli has received regular psychiatric treatment for this condition.  (*Id*.)

On June 15, 2017, Ms. Peroli was at the Medina County Courthouse in order to testify in a Domestic Relations hearing.  (*Id*. at ¶ 44.)  On that date, she observed a verbal altercation between an attorney and an elderly witness in the waiting room of the Domestic Relations Division of the

Medina County Court of Common Pleas.  (*Id*. at ¶ 45.)  When she attempted to assist the elderly woman, she was confronted by the "agitated attorney."  (*Id*.)  As a result of the "commotion," the court's administrator threatened to throw everyone out of the court waiting room.  (*Id*.)

Plaintiffs allege that the court administrator then instructed a deputy sheriff to escort Ms. Peroli from the Courthouse.  (*Id*. at ¶ 46.)  The deputy physically grabbed Ms. Peroli's arm and began pulling her out of the waiting room.  (*Id*.)  Ms. Peroli informed the deputy that she had PTSD and that his touching her in any manner would cause an aggravation of her condition.  (*Id*.)  Furthermore, Plaintiffs allege that Ms. Peroli "instructed the deputy to accommodate her disability by refraining from making any unnecessary physical contact as it was unnecessary as she was in complete compliance with the Administrator's directive to leave the Courthouse."  (*Id*.)  Plaintiffs allege that the deputy ignored Ms. Peroli's request and placed his hand on the middle of her back to direct her out of the courthouse.  (*Id*. at ¶ 47.)

As a result of this incident, Ms. Peroli filed a citizen complaint with the Medina County Sheriff's Department.[1]  (*Id*. at ¶ 52.)  On June 27, 2017, Ms. Peroli's citizen complaint was dismissed as unfounded by the Medina County Sheriff's Department.  (*Id*. at ¶ 55.)  On that same date, Medina County Sheriff's Department Captain Kenneth Baca, Lieutenant Matthew Linscott and/or John/Jane Doe Sheriff's Department employees instructed Sergeant James Kiousis to forward all reports relating to Ms. Peroli to Gregory Huber, who served as the Medina County Prosecutor.  (*Id*. at ¶ 56.)

On August 15, 2017, Huber advised Sergeant Kiousis that he was authorized to file a criminal complaint and affidavit against Ms. Peroli under Ohio Rev. Code § 2921.15.  (*Id*. at ¶ 58.)  That

---

[1] A copy of Ms. Peroli's complaint is attached to the Amended Complaint as Exhibit 1.  (Doc. No. 4-1.)

statute provides that: "No person shall knowingly file a complaint against a peace officer that alleges that the peace officer engaged in misconduct in the performance of the officer's duties if the person knows that the allegation is false."  Ohio Rev. Code § 2921.15(b).  A violation of this statute is a first-degree misdemeanor.  *See* Ohio Rev. Code § 2921.15(c).  Plaintiffs allege that Huber's "legal advice to Sgt. Kiousis intentionally ignored and/or disregarded the binding precedent of the Ohio Ninth District Court of Appeals set forth in the case of *City of Akron v. Robert Davenport*, C.A. No. 21552, 04-LW-0370 February 4, 2004 holding that O.R.C. § 2921.15 does not permit the prosecution of a citizen for filing a citizen complaint with a law enforcement agency alleging improper officer conduct."  (*Id.* at ¶ 65.)

On August 15, 2017, Sergeant Kiousis "prepared, executed and filed a false criminal complaint and false affidavit" with the Clerk of Courts, Medina Municipal Court, alleging that Ms. Peroli violated Ohio Rev. Code § 2921.15.  (*Id.* at ¶ 67.)  On that same date, the Clerk issued an arrest warrant for Ms. Peroli.  (*Id.* at ¶ 76.)  Plaintiffs allege that the process issued by the Clerk "expressly authorized service of the summons in lieu of arrest."  (*Id*. at ¶ 77.)

Despite the fact that service of the warrant by summons was authorized, the Medina County Sheriff's Department ordered Deputies Benjamin Taylor and Michael Norris to physically arrest Ms. Peroli.  (*Id.* at ¶ 83.)  Plaintiffs allege that, at this time, the Medina County Sheriff's Department was aware that Ms. Peroli suffered from a mental and/or emotional disability[2] but nonetheless "intentionally refused to provide [her] the reasonable accommodation of the authorized service of process in lieu of arrest," in retaliation for her citizen complaint.  (*Id*. at ¶¶ 71, 82-84.)

---

[2] In addition to the fact that Ms. Peroli's citizen complaint expressly references her PTSD (Doc. No. 4-1), Plaintiffs allege that, in 2016, the Medina County Sheriff's Department responded to a distress call at Plaintiffs' residence wherein Mr. Peroli was concerned that Ms. Peroli might be a suicide risk due to her PTSD.  (Doc. No. 4 at ¶ 71.)

3

On August 17, 2017, Deputies Taylor and Norris arrested Ms. Peroli in her home.  (*Id*. at ¶ 84.)  During her arrest, Ms. Peroli "pleaded with Deputies Taylor and Norris to provide her medical assistance including but not limited to her necessary psychiatric medication."  (*Id*. at ¶ 88.)  Deputies Taylor and Norris refused to do so.  (*Id*. at ¶ 89.)  Ms. Peroli then "became physically incapacitated by the exacerbation of her PTSD condition."  (*Id*. at ¶ 90.)  Despite her "acute physical distress and requests," Deputies Taylor and Norris refused to loosen or remove Ms. Peroli's handcuffs.  (*Id*. at ¶ 91.)  Eventually, Deputies Taylor and Norris called the Lafayette Township Fire Department medical unit for medical assistance.  (*Id*. at ¶ 93.)  Although requested by emergency medical personnel to remove Ms. Peroli's handcuffs, Deputies Taylor and Norris initially refused to do so.  (*Id*. at ¶ 94.)

Ultimately, Ms. Peroli was transported by fire department ambulance to the Medina Hospital emergency department for medical treatment.  (*Id*. at ¶ 95.)  At that point, the Medina County Sheriff's Department elected to serve Ms. Peroli a summons in lieu of arrest, after which Deputies Taylor and Norris left the summons on her hospital bed.  (*Id.* at ¶¶ 96 - 98.)  According to Plaintiffs, Deputies Taylor and Norris had seized Ms. Peroli's psychiatric medications while at her home but failed to give them to medical personnel until they departed from the hospital.  (*Id*. at ¶ 100-102.)  Ms. Peroli was discharged from the hospital later that evening.  (*Id*. at ¶ 103.)

Plaintiffs allege that "[a]ll criminal charges authorized and prosecuted by the City of Medina and Gregory Huber and initiated by the Medina County Sheriff Department Defendants were dismissed by the Medina Municipal Court with prejudice prior to trial on the grounds that Joette Peroli's conduct in filing a citizen complaint did not constitute criminal conduct under O.R.C. § 2921.15."  (*Id.* at ¶ 106.)  Plaintiffs further allege that the Medina Municipal Court "dismissed the

false criminal complaint and affidavit filed by Sgt. James Kiousis and The Medina County Sheriff's Department for lack of probable cause."  (*Id.* at ¶ 107.)

Plaintiffs allege that, as a result of her arrest and prosecution, Ms. Peroli's PTSD "was chronically exacerbated . . . , causing extreme and severe loss of functioning for months after her arrest." (*Id.* at ¶ 104.)  Consequently, Ms. Peroli alleges that she was unable to complete her studies,[3] to work, or to function in her normal daily and family life.  (*Id.* at ¶ 105.)  She further alleges that she is "still unable to leave her home by herself with any regularity" and "continues to treat the chronic exacerbation of her PTSD caused by each and all Defendants with psychiatric care professionals or other medical professionals."  (*Id.* at ¶¶ 111, 112.)

### B.    Procedural History

On August 2, 2019, Plaintiffs filed a Complaint in this Court against the following Defendants:  (1) City of Medina Law Director Gregory Huber; (2) Medina County Sheriff Tom Miller; (3) Medina County Sheriff's Department Lieutenant Matthew Linscott; (4) Medina County Sheriff's Department Sergeant James Kiousis; (4) Medina County Sheriff's Department Deputies Benjamin Taylor and Michael Norris; (5) the County of Medina, Ohio; and (6) John/Jane Does 1-5.[4] (Doc. No. 1.)  The Complaint alleged numerous federal and state law claims arising out of Plaintiff Joette Peroli's arrest on August 17, 2017.

---

[3] Ms. Peroli alleges that she was a student at Cleveland Marshall College of Law at the time of the incident.  (Doc. No. 4 at ¶ 41.)

[4] The Complaint identified the John/Jane Does as follows: "Defendants JOHN / JANE DOE is, and at all times relevant herein has been, employed by COUNTY OF MEDINA, OHIO and assigned to the Medina County Sheriff's Department and/or personally participated in the events alleged herein. They are responsible for facilitating and authorizing the violation of JOETTE PEROLI'S 4th Amendment Constitutional Right to be free from unlawful search and seizure, false arrest, malicious prosecution, abuse of process and violations of 42 U.S.C. §1983 and §12132. Defendants JOHN / JANE DOE are sued in their official and individual capacities."  (Doc. No. 1 at ¶ 16.) This same description of the John/Jane Doe Defendants is contained in the Amended Complaint.  (Doc. No. 4 at ¶ 17.)

Shortly thereafter, on August 8, 2019, Plaintiffs filed an Amended Complaint which added the following three Defendants: (1) the City of Medina, Ohio; (2) Medina County Sheriff's Department Captain Kenneth Baca; and (3) the Medina County Sheriff's Department.  (Doc. No. 4.) The Amended Complaint asserts claims under 42 U.S.C. § 1983 for violation of Joette Peroli's First, Fourth, and Fourteenth Amendment Rights, including claims for false arrest, excessive force, and retaliation.  (Doc. No. 4, Counts I and II).  In addition, Plaintiffs assert Monell claims against the City of Medina and Medina County Defendants for failure to train and/or develop policies, practices, and/or procedures, including claims relating to (1) filing charges for violations of Ohio Rev. Code § 2921.15; and (2) the arrest and detention of mentally and/or emotionally disturbed persons.  (*Id*. at Counts III and IV.)  Plaintiffs also assert a claim for violation of Title II of the Americans with Disabilities Act, 42 U.S.C.A. § 12132, as well as claims for conspiracy, false arrest, malicious prosecution, intentional/negligent infliction of emotional distress, and loss of consortium.  (*Id*. at Counts V-X).

On September 4, 2019, Defendants City of Medina and Gregory Huber (hereinafter "the City of Medina Defendants") filed an Answer.  (Doc. No. 10.)  Shortly thereafter, Defendants County of Medina, the Medina County Sheriff's Department, and County Sheriff's Officers Baca, Kiousis, Linscott, Miller, Norris and Taylor (hereinafter "the Medina County Defendants") filed a joint Answer.  (Doc. No. 11.)  The Medina County Defendants did not file an Answer or enter an appearance of counsel on behalf of the John/Jane Doe Defendants.

On October 11, 2019, Defendants City of Medina and Huber filed a Motion for Judgment on the Pleadings.  (Doc. No. 14.)  Plaintiffs filed a Brief in Opposition on October 25, 2019, to which the City and Huber replied on November 6, 2019.  (Doc. Nos. 21, 22.)

6

Meanwhile, a Case Management Conference was conducted on October 22, 2019. (Doc. No. 19.) At that time, the Court set a deadline of November 29, 2019 for parties to be joined and pleadings amended. (*Id*.) In addition, the Court set a discovery deadline of March 27, 2020 and a dispositive motion deadline of April 27, 2020. (*Id*.) The discovery deadline was later extended to April 27, 2020, and the dispositive motion deadline was later extended to July 27, 2020. (Doc. No. 44, Non-Document Order dated April 1, 2020).

Discovery proceeded over the next several months. In September 2019, Plaintiffs served their First Set of Interrogatories and Requests for Production on the Medina County Defendants. (Doc. No. 51-2.) Among other things, Plaintiffs asked Defendants to identify "each person whom plaintiff claims to have any knowledge and/or information with respect to any of the events/acts set forth in the complaint." (*Id*. at Interrogatory No. 2.) Defendants responded, in relevant part, that "[it] is anticipated that individuals having knowledge would include … defendants Gregory Huber, Tom Miller, Ltn. Matthew Linscott, Sgt. James Kiosis, Dpt. Benjamin Taylor, and Dpt. Michael Norris."[5] (*Id*.) Defendants also indicated that "[o]ther individuals may be identified in discovery. As discovery is just now proceeding, this interrogatory may be supplemented."[6] (*Id*.)

---

[5] In a subsequent interrogatory seeking the full names, addresses, telephone numbers, social security numbers and dates of birth of "all persons who are witnesses to any of the acts alleged in the Complaint or the defenses asserted in the Answer," the Medina County Defendants declined to provide such information, on the grounds that "we do not provide social security numbers and personal information relative to sheriff department employees." (*Id*. at Interrogatory No. 4.)

[6] On December 3, 2019, Plaintiffs filed a Motion to Compel requesting that the Court "compel the production from all [Medina Count Sheriff's Department] Defendants, in accordance with Rule 26(a)(1)(A)(iv), all applicable insurance coverages for each individual MCSD Defendant pursuant to Rule 37(a)3(A)&(B)." (Doc. No. 27.) Plaintiffs later supplemented their Motion to seek production of "all insurance policies held by the Medina County Defendant entities as well as the policies held by the individual Defendants." (Doc. No. 28.) On December 9, 2019, the Court issued an Order granting Plaintiffs' Motion but permitting Defendants to redact personal information of the individual Defendants, to include home addresses, social security numbers and other private familial information. (Doc. No. 31.)

7

Plaintiffs later served another set of Interrogatories and Requests for Production of Documents, to which the Medina County Defendants responded in January 2020.  (Doc. No. 49-1.) In response to an interrogatory requesting the identification of "the persons who provided Deps. Taylor and/or Norris a physical copy of Joette Peroli's arrest warrant prior to her arrest on August 17, 2017," the Medina County Defendants responded that a copy of the bench warrant was given to Medina County Sheriff's Department Sergeant Todd Heckel.  (*Id*. at Interrogatory No. 29.)

Plaintiffs deposed Sergeant Heckel on March 12, 2020.  (Doc. No. 47.)  At that time, Sergeant Heckel testified that he (1) was Deputies Taylor and Norris' shift supervisor on the date of Ms. Peroli's arrest; (2) handed the bench warrant for Ms. Peroli to Deputies Taylor and Norris for execution on August 17, 2017; (3) responded to Ms. Peroli's residence during the course of her arrest; and (4) was present at the Medina County Hospital with Ms. Peroli.  (Doc. No. 51-6 at Tr. 51, 70-71, 93-94, 101.)

On March 18, 2020, Plaintiffs filed a "Motion to Amend the First Amended Complaint to Name Medina County Sheriff Sgt. Todd Heckel as John Doe #1."  (Doc. No. 49.)  The County Defendants filed a Brief in Opposition on March 25, 2020, to which Plaintiffs replied.  (Doc. Nos. 50, 51.)

### III. Analysis

#### A. Plaintiffs' Motion for Leave to Amend Complaint (Doc. No. 49)

In their Motion, Plaintiffs seek leave to file an Amended Complaint naming Sergeant Heckel as Defendant John Doe No. 1.  (Doc. No. 49.)  Plaintiffs acknowledge that the statute of limitations expired on August 17, 2019; however, they assert that "their failure to identify Sgt. Heckel as a participant in the arrest prior to [that date] constitutes a reasonable mistake under Fed. R. Civ. P.

15(c) that permits the requested amendment and properly relates it back to the filing date of the complaint."  (*Id.* at p. 4.)  Specifically, Plaintiffs allege that, prior to filing the original Complaint, they were only aware that Sergeant Heckel had met with and videotaped Ms. Peroli on June 15, 2017 when she filed her citizens complaint.  (*Id.*)  Plaintiffs assert that none of the incident reports relating to Ms. Peroli's arrest identify Sergeant Heckel as being present at the Peroli residence during her August 17, 2017 arrest, nor do they identify Heckel as Defendants Taylor and Norris' supervisor on that date.  (*Id.* at p. 5.)

Plaintiffs allege that they were, in fact, "completely unaware" of Sergeant Heckel's involvement in Ms. Peroli's arrest until January 2020, when the Medina County Defendants submitted discovery responses identifying Heckel as the officer who received the arrest warrant improperly procured by Sgt. Kiousis and then provided it to Defendants Taylor and Norris.  (Doc. No. 49-1 at p. 3.)  Plaintiffs state that they did not become aware until Sergeant Heckel's March 20, 2020 deposition that he directly supervised Defendants Taylor and Norris at the Perolis' home and participated in Ms. Peroli's arrest for over 90 minutes without activating his body camera.  (Doc. No. 49 at p. 6.)

Based on the above, Plaintiffs maintain that amendment is proper under Rule 15(c) because, although they were aware of Heckel's existence when they filed the Complaint, they were mistaken about his status or role in the events giving rise to the claim.  (*Id.*)  Lastly, Plaintiffs assert that the requirements of Rule 15(c) are met because Sergeant Heckel received notice of the Complaint when it was filed; knew or should have known that he would have been named as a defendant if Plaintiffs were aware of his participation; and will not be prejudiced in defending on the merits.  (*Id.* at p. 7.)

In their Brief in Opposition, the Medina County Defendants argue that the relation back

provisions of Rule 15(c) do not save Plaintiffs' claims against Sergeant Heckel because, under controlling Sixth Circuit precedent, "Fed. R. Civ. P. 15(c) applies only in the case of a mistake over the proper party's identity, and does not allow for a plaintiff to simply use a John Doe designation as a placeholder until they can ascertain the identity of the defendant." (Doc. No. 50 at p. 2.) The Medina County Defendants also assert that Plaintiffs have failed to show that, prior to his March 2020 deposition, Sergeant Heckel had notice of the claims against him. (*Id*. at p. 5.) Accordingly, Defendants argue Plaintiffs' Motion should be denied because amendment would be futile as any claims against Sergeant Heckel would now be time-barred.[7] (*Id*.)

In their Reply Brief, Plaintiffs assert that they satisfy both the mistake and notice provisions of Fed. R. Civ. P. 15(c), citing the Supreme Court's decision in *Krupski v. Costa Crociere S.p.A*., 560 U.S. 538 (2010). (Doc. No. 51.) They claim that the Medina County Defendants were certainly aware of Plaintiffs' claims against Sergeant Heckel and that Defendants' knowledge can be imputed to Heckel as a matter of law. (*Id*.) Lastly, Plaintiffs argue that the interests of justice require that they be permitted to amend to add Sergeant Heckel as a defendant in light of Defendants' breach of their duty to timely disclose Sergeant Heckel's participation in Ms. Peroli's arrest. (*Id*. at p. 4.)

Federal Rule of Civil Procedure 15(c) provides, in relevant part, as follows:

**(c) Relation Back of Amendments**.

**(1) When an Amendment Relates Back**. An amendment to a pleading relates back to the date of the original pleading when:

---

[7] Defendants also argue that "each and every John/Jane Doe defendant should be dismissed from this matter" because they were not served within Fed. R. Civ. P. 4(m)'s 90-day service period. (Doc. No. 50 at pp. 3, 7.) This argument is rejected. The Medina County Defendants have not entered an appearance or filed an Answer on behalf of the John/Jane Doe Defendants. Thus, it is questionable whether the Medina County Defendants have standing to move for dismissal of the John/Jane Doe Defendants. In any event, the Court will not entertain a request to dismiss parties to a lawsuit in the context of a brief in opposition. If the Medina County Defendants wish to seek dismissal of the John/Jane Doe Defendants, the proper course would be to enter an appearance on their behalf and file a Motion to Dismiss.

\* \* \*

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

In the Sixth Circuit, courts have a longstanding precedent for interpreting Rule 15(c)(1)(C) "strictly." *See Brown v. Cuyahoga County*, 517 Fed. Appx. 431, 435 (6th Cir. 2013); *North v. County of Cuyahoga*, 2017 WL 3065502 at \* 8 (N.D. Ohio July 19, 2017).  Of particular relevance herein, the Sixth Circuit has found that the substitution of a "John Doe" defendant with a named party is not a "mistake concerning the proper party's identity" for purposes of Rule 15(c)(1)(C)(ii) but is, instead, an addition of a new party.  *See Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 319 (6th Cir. 2010); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir.1996) (substituting a named defendant for a "John Doe" defendant is considered an addition of parties rather than a mere substitution of parties)).  *See also Rayfield v. City of Grand Rapids, Michigan,* 768 Fed. Appx. 495, 502 (6th Cir. April 15, 2019); *Brown,* 517 Fed. Appx. at 435; *Smith v. City of Akron*, 476 Fed. Appx. 67, 69 (6th Cir. 2012).

Rather, the term "mistake" as used in Rule 15(c)(1)(C)(ii) means an actual mistake.  *See Brown*, 517 Fed. Appx. at 435; *North*, 2017 WL 3065502 at \* 8.  As the Sixth Circuit has explained, this understanding of the Rule prevents "eleventh-hour lawsuits with placeholder defendants designed to frustrate the operation of a statute of limitations."  *Brown*, 517 Fed. Appx. at 435 (citing *Cox*, 75

11

F.3d at 240).  Rule 15(c) does not offer a remedy for situations where plaintiffs wait until the last day to file and do not leave any time to identify defendants within the relevant time. *See Smith*, 476 Fed. Appx. at 69 ("The Rule allows relation back for the mistaken identification of defendants, not for defendants to be named later through 'John Doe,' 'Unnamed Defendants' or other missing appellations.") *See also Rayfield*, 768 Fed. Appx. at 502.

For the following reasons, the Court finds that Rule 15(c) does not allow relation back of Plaintiffs' proposed claims against Sergeant Heckel.  In light of the well-established Sixth Circuit precedent noted above, the Court finds that Plaintiffs herein did not make a "mistake" concerning John Doe 1's identity, but rather seek to add a new, previously unknown participant in Ms. Peroli's arrest as a Defendant, in place of John Doe 1, which is held not be permissible under Sixth Circuit law. *See Cox,* 75 F.3d at 240 ("Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and [] such amendments do not satisfy the 'mistaken identity' requirement" of Rule 15(c)). *See also Rayfield*, 768 Fed. Appx. at 502; *Brown,* 517 Fed. Appx. at 435; *Smith*, 476 Fed. Appx. at 69.  Thus, Plaintiffs cannot establish a "mistake" of identity and consequently do not satisfy the relation back exception of Rule 15(c)(1)(C)(ii).

Plaintiffs' argument that the Supreme Court's decision in *Krupski, supra* demands a different result, is without merit.  In *Krupski*, the plaintiff tripped over a cable and fractured her femur while onboard a cruise ship. *Krupski*, 560 U.S. at 541.  Her passenger ticket (which constituted the contract between the parties) identified "Costa Crociere S., p. A.", as the carrier, but also referenced an entity called "Costa Cruise Lines N.V." *Id*. at 542.  Krupski's counsel communicated with Costa Cruise Lines regarding her injuries but was unable to negotiate a settlement. *Id*. at 543.  Krupski then sued Costa Cruise Lines in federal district court. *Id.*  Costa Cruise Lines denied that it was the proper

12

defendant in its Answer, and later moved for summary judgment in its favor on that basis. *Id.* The district court denied Costa Cruise Lines' summary judgment motion without prejudice and allowed Krupski to file an amended complaint naming Costa Crociere as a defendant. *Id.* at 544. Costa Crociere then moved to dismiss, contending that the amendment did not relate back under Rule 15(c). *Id.* The district court agreed, and the Eleventh Circuit Court of Appeals affirmed. *Id.* at 545.

The Supreme Court reversed, finding that "[t]he question under Rule 15(c)(1)(C)(ii) is not whether Krupski knew or should have known the identity of Costa Crociere as the proper defendant, but whether Costa Crociere knew or should have known that it would have been named as a defendant but for an error." *Id.* at 548. The Court explained:

> Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity. For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake. A mistake is "[a]n error, misconception, or misunderstanding; an erroneous belief." Black's Law Dictionary 1092 (9th ed.2009) . . . That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties. The only question under Rule 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him.

*Id.* at 548-549. Applying these principles to the facts of Krupski's case, the Supreme Court found that relation back was proper under Rule 15(c)(1)(C)(ii), explaining that "[b]ecause the complaint made clear that Krupski meant to sue the company that 'owned, operated, managed, supervised and controlled' the ship on which she was injured, …, and also indicated (mistakenly) that Costa Cruise performed those roles, …, Costa Crociere should have known, within the Rule 4(m) period, that it

13

was not named as a defendant in that complaint only because of Krupski's misunderstanding about which 'Costa' entity was in charge of the ship—clearly a 'mistake concerning the proper party's identity.'" *Id*. at 554-555.

Plaintiffs argue that relation back is proper because, as in *Krupski*, Plaintiffs were aware of Sergeant Heckel's existence but "harbored a misunderstanding about Heckel's role in [Ms. Peroli's] arrest." (Doc. No. 51 at p. 7.)  The Court finds this argument to be without merit.  In *Krupski,* the plaintiff was aware of both Costa Crociere and Costa Cruise Lines but made a mistake about which of these two corporate entities to sue for her injuries.  By contrast, Plaintiffs herein named John/Jane Does 1-5 as defendants because they did not know the identities of all of the participants in Ms. Peroli's arrest.  The fact that Plaintiffs may have been aware of Sergeant Heckel's involvement in taking Ms. Peroli's *citizen complaint* does not translate into a finding that they "harbored a misunderstanding about Heckel's role in her *arrest*" and therefore made a "mistake" for purposes of Rule 15(c) pursuant to *Krupski.*

Indeed, the Sixth Circuit has explicitly rejected the application of *Krupski* to John Doe defendants under similar circumstances.  For example, in *Smith v. City of Akron*, 476 Fed. Appx. 67, 69 (6th Cir. 2012), Smith filed suit in state court claiming violations of the federal constitution and state tort law by "John and Jane Does 1-10," the City of Akron, and the Akron Police Department. The City removed the case to federal court, after which Smith amended his complaint to add Officers Ross and Miles as defendants in place of "John Doe" numbers 1 and 2.  Ross and Miles moved to dismiss on the basis that Smith's claims were time-barred.  The district court granted the motion, reasoning that Smith's amendment did not "relate back" to his original complaint.  The Sixth Circuit agreed, finding that "Smith did not make a mistake about the identity of the parties he intended to

14

sue; he did not know who they were and apparently did not find out within the two-year limitations period. The relation-back protections of Rule 15(c) were not designed to correct that kind of problem." *Smith*, 476 Fed. Appx. at 69.

In so finding, the Sixth Circuit found Smith's reliance on *Krupski* to be misplaced, explaining as follows:

> Smith adds that a recent Supreme Court decision requires us to alter our interpretation of Rule 15(c). Not so. In *Krupski v. Costa Crociere S.p.A.*, 560 U.S. ——, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010), the plaintiff knew of two potential parties when she filed the lawsuit, but she sued the wrong party and corrected the mistake only after the statute of limitations had expired. *Id.* at 2490–92. The Supreme Court held that Krupski made a "mistake" under Rule 15(c), even though she knew the identity of the proper party when she filed her complaint. *Id.* at 2494. "[A] plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim." *Id.*
>
> Krupski's problem is not Smith's problem. Smith did not make a mistake about which defendant to sue; he simply did not know whom to sue or opted not to find out within the limitations period. *Cox*, 75 F.3d at 240; *Moore*, 267 Fed. Appx. at 454–56. Because he waited until the last day of the two-year limitations period to file his complaint, that left no time to discover the identity of his arresting officers within the relevant time. Even after *Krupski*, Rule 15(c) offers no remedy for this problem. The Rule allows relation back for the mistaken identification of defendants, not for defendants to be named later through "John Doe," "Unknown Defendants" or other missing appellations. Our approach is consistent with the holdings of every other circuit on this issue. *See Wilson v. U.S. Gov't*, 23 F.3d 559, 563 (1st Cir.1994); *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir.1995); *Locklear v. Bergman & Beving AB*, 457 F.3d 363, 367 (4th Cir.2006); *Jacobsen v. Osborne*, 133 F.3d 315, 320–21 (5th Cir.1998); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir.1998); *Foulk v. Charrier*, 262 F.3d 687, 696 (8th Cir.2001); *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir.2004); *Wayne v. Jarvis*, 197 F.3d 1098, 1103–04 (11th Cir.1999). *But cf. Singletary v. Penn. Dep't of Corr.*, 266 F.3d 186, 200 (3d Cir.2001) (urging the Rules Advisory Committee to amend Rule 15(c)(3) to adopt the opposite approach).

*Id.* at *69-70. The Sixth Circuit has repeatedly reached the same conclusion under similar facts. *See, e.g.*, *Rayfield*, 768 Fed. Appx. at 502; *Brown,* 517 Fed. Appx. at 435; *Moore v. Tennessee*, 267 Fed. Appx. 450, 455 (6th Cir. 2008).

15

Here, nothing in Plaintiffs' Amended Complaint suggests or establishes that they made a mistake when they sued John Doe 1, as opposed to the proper party.  Rather, Plaintiffs simply did not know the identities of all of the participants in Ms. Peroli's arrest when they brought suit.  As noted above, "Rule 15(c) offers no remedy for this problem."  *Smith*, 476 Fed. Appx. at *69-70.  *Krupski* does not require a different result.  *See Combs v. Management & Training Corp.*, 2018 WL 3060001 at * 4 (N.D. Ohio June 20, 2018); *North*, 2017 WL 3065502 at * 8; *Wallace v. Dolgen Midwest, LLC*, 2015 WL 778840 at * 2-3 (N.D. Ohio Feb. 24, 2015). [8]

Lastly, Plaintiffs argue that "justice requires that [they] be given leave to amend their complaint" because the Medina County Defendants "breached their duty to disclose Sgt. Heckel's participation in Mrs. Peroli's arrest."  (Doc. No. 51 at p. 4.)  Plaintiffs maintain that the Medina County Defendants improperly failed to either (1) admit that the John/Jane Doe defendants named in the Amended Complaint included Medina County Sheriff's Department employees; or (2) timely disclose Sergeant Heckel's "direct and substantial participation" in Ms. Peroli's arrest.  (*Id.*)  Plaintiffs maintain that, if Defendants had identified Sergeant Heckel in their October 2019 responses to Plaintiffs' First Set of Interrogatories, Plaintiffs would have served Sergeant Heckel and/or moved to amend within the time prescribed by Rule 4(m).  (*Id.*)

The Court rejects this argument for several reasons.  First, Plaintiffs raise their "interests of justice" argument for the first time in their Reply Brief.  It is well established that courts will not normally consider issues raised for the first time in Reply Briefs, as it deprives the non-movant of a full and fair opportunity to respond. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th

---

[8] Because the Court finds that Plaintiffs failed to demonstrate a "mistake," the Court need not reach the issue of notice and/or whether Sergeant Heckel knew or should have known that the instant action would have been brought again him, for purposes of Rule 15(c)(1)(i) and/or (ii).

16

Cir.2008) (explaining that "reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration") (emphasis in original) (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp*., 284 F.3d 1261, 1274 (Fed. Cir. 2002)); *Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc*., 436 F.3d 662, 676 (6th Cir. 2006) (stating that "[i]t is impermissible to mention an issue for the first time in a reply brief because the [opponent] then has no opportunity to respond") (quoting *Knighten v. Commissioner*, 702 F.2d 59, 60 n. 1 (5th Cir. 1983)).

However, even assuming *arguendo* that Plaintiffs' Motion could be construed as sufficiently raising this issue, the Court would find it to be without merit.  As an initial matter, the Sixth Circuit has expressly held that a defendant's failure or refusal to provide information to the plaintiff does not constitute a "mistake" under Rule 15(c).  *See Rayfield*, 768 Fed. Appx. at 502-503 (finding that Rule 15(c) is inapplicable to a situation where a defendant fails to respond promptly to requests for information); *Brown*, 517 Fed. Appx. at 433-435 (same).  Moreover, while a defendant's failure to timely disclose information to the plaintiff may form the basis of an equitable tolling argument, *see Rayfield, supra* and *Brown, supra*, Plaintiffs failed to argue equitable tolling in either their Motion for Leave to Amend or their Reply Brief.

Finally, even if Plaintiffs had raised equitable tolling, the Court would find such an argument to be without merit.  To determine whether equitable tolling is appropriate, the Court considers: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness is remaining ignorant of the particular legal requirement." *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir.1998). *See also Brown*, 517 Fed. Appx. at 434-435.  Here, Plaintiffs do

17

not argue that they were ignorant of the filing requirement and, therefore, the inquiry would have focused on diligence and prejudice.  *See Brown*, 517 Fed. Appx. at 435 (citing *Nardei v. Maughan (In re Maughan),* 340 F.3d 337, 344 (6th Cir. 2003)).

The Court finds that Plaintiffs failed to allege sufficient diligence.  The record reflects that Plaintiffs filed the original Complaint less than two weeks before the running of the statute of limitations.  Plaintiffs offer no reason why they could not have filed suit earlier, thereby allowing sufficient time within which to ascertain Sergeant Heckel's identity through discovery.[9]  Courts within this Circuit (including the Sixth Circuit) have rejected equitable tolling under similar circumstances.  *See, e.g., Wiggins v. Kimberly-Clark Corp*., 641 Fed. Appx. 545 (6th Cir. 2016) (declining to apply equitable tolling where the plaintiff "had the tools at hand, once he filed suit, to pry that information [i.e., the defendants' identities] out of the company" but "neglected even to try to pick up those tools until the last minute.").  *See also North,* 2017 WL 3065502 at * 9-10; *Wallace*, 2015 WL 778840 at * 3; *Stevens v. Toledo Police Dep't*, 2009 WL 2734660 at * 1 (N.D. Ohio Aug. 26, 2009).

Accordingly, and for all the reasons set forth above, the Court finds that Rule 15(c) does not allow relation back of Plaintiffs' proposed claims against Sergeant Heckel. As Plaintiffs do not dispute that the statute of limitations expired in August 2019, the Court finds it would be futile to

---

[9] Moreover, the Court notes that, during Sergeant Heckel's deposition, Plaintiffs' counsel indicated that Defendant Taylor's supplemental incident report identified Heckel as having been present at the Medina County Hospital during the incident with Ms. Peroli on August 17, 2017.  (Doc. No. 51-6 at Tr. 101.)  In addition, Plaintiffs do not dispute that Sergeant Heckel appears on Defendant Taylor's body camera footage of that incident. (Doc. No. 49 at fn 1.)  Plaintiffs do not argue that Defendants failed to timely produce either Defendant Taylor's supplemental incident report and/or body camera footage.

allow them to substitute Sergeant Heckel in place of John Doe No. 1.  Therefore, Plaintiffs' Motion to Amend to Name Sergeant Heckel as John Doe No. 1 (Doc. No. 49) is denied.

**B.    Defendants City of Medina and Gregory Huber's Motion for Judgment on the Pleadings (Doc. No. 14)**

Defendants City of Medina and Gregory Huber move for judgment on the pleadings in their favor with respect to Plaintiffs' claims.  (Doc. No. 14.)  Plaintiffs filed a Brief in Opposition, to which Defendants replied.  (Doc. Nos. 21, 22.)

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings."  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings.  *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011).  In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate*

*Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### 1.    Individual Capacity Claims against Defendant Huber

In the Amended Complaint, Plaintiffs allege that Defendant Huber "has been employed by the City of Medina as an attorney, and in that capacity is responsible for facilitating and authorizing the violation of JOETTE PEROLI'S 4th Amendment Constitutional Right to be free from unlawful search and seizure, false arrest, malicious prosecution and abuse of process through the intentional, wanton, willful and unconstitutional enforcement of Ohio Revised Code 2921.15(B)."  (Doc. No. 4 at ¶ 10.)  Defendant Huber is named with respect to Plaintiffs' Section 1983 claim set forth in Count 1, as well Plaintiffs' conspiracy, negligent/intentional infliction of emotional distress, false arrest, malicious prosecution, and loss of consortium claims set forth in Counts VI through X.

Defendant Huber argues that Plaintiffs' federal individual capacity claims against him must be dismissed on the basis of absolute prosecutorial immunity.  (Doc. No. 14 at p. 4-8.)  Huber asserts that the conduct ascribed to him in the Amended Complaint relates to the initiation of a prosecution and is, therefore, "intimately associated with the judicial process" and protected by absolute immunity.  (*Id.*)  Huber maintains that Plaintiffs' attempt to characterize his conduct as giving "legal advice" (that is not covered by absolute immunity) fails because "the alleged 'legal advice' referenced by the plaintiffs was actually Mr. Huber's authorization of criminal proceedings."  (*Id.*)

20

Plaintiffs argue that "the Amended Complaint clearly seeks to hold Huber liable for conduct occurring prior to the initiation of criminal process" by the Medina County Sheriff's Department and, therefore, "the shield of absolute immunity cannot be raised to protect him from §1983 liability." (Doc. No. 21 at p. 5.)  Plaintiffs maintain that Huber's conduct was "not intimately associated with the judicial process" because he "merely encouraged the [Medina County Sheriff's Department] to independently initiate criminal process." (*Id.* at p. 8.)  Specifically, Plaintiffs maintain:

> [Huber] made no decision and took no action to exercise the authority of his office and prosecute Plaintiff; he clearly took no action to prepare his own case.  He indifferently advised an independent agency, the MCSD [i.e., Medina County Sheriff's Department], that they could initiate criminal process against Plaintiff if they so desired.  He didn't assist in the preparation of or review the MCSD criminal affidavit / complaint.  He clearly conducted no research or independent investigation into the law or facts. He offers no proof that the MCSD would not have independently exercised its inherent authority to initiate a misdemeanor prosecution, in furtherance of its official policy to criminally prosecute civilian complaints it believed to be false under O.R.C. §2921.15. Am. Complaint Exhibits 1 & 2. He has not shown that he was directly and intimately connected to the initiation of Plaintiff's prosecution or that his indifference prior to the initiation of criminal process qualifies for absolute immunity.

(*Id.* at pp. 7-8.)  In sum, Plaintiffs argue that Huber did not give legal advice to the County or otherwise function as an advocate but, rather, served as a "perfunctory administrative rubber stamp" for the Medina County Sheriff's Department.  (*Id.* at p. 8.)

Defendants argue that Plaintiffs' positions are incompatible, noting that "on the one hand, the plaintiffs assert that Mr. Hubert was directly responsible for the plaintiff's prosecution, could have prevented the prosecution, and was solely responsible for the prosecution.  On the other hand, the plaintiffs attempt to distance Mr. Huber's conduct from the actual prosecution of the plaintiff, claiming that his advice was not intimately associated with the judicial phase of the criminal process." (Doc. No. 22 at p. 1.)  Defendants further note that, while the Amended Complaint repeatedly alleges that Huber is liable for providing legal advice to the County (*see* Doc. No. 4 at ¶¶ 64, 65), Plaintiffs

21

claim in their Brief in Opposition that Huber did **not** provide legal advice.  (*Id.*)  Defendants maintain that, in fact, the Amended Complaint alleges that Huber was responsible for "facilitating and authorizing" the filing of charges against Ms. Peroli and that this conduct is shielded by absolute immunity under established Supreme Court and Sixth Circuit precedent.  (*Id.* at p. 2.)

The Supreme Court has held that prosecutors are entitled to absolute immunity from damages for initiating a prosecution and presenting the state's case.  *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993).  A prosecutor must exercise his or her best professional judgment both in deciding which suits to bring and in conducting them in court. *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006).  This duty could not be properly performed if the prosecutor is constrained in making every decision by the potential consequences of personal liability in a suit for damages.  *Id.*  As the Supreme Court explained, these suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.  *See Imbler*, 424 U.S. at 424-25.)

In determining whether an official is entitled to prosecutorial immunity, courts employ a "functional approach" and look to the "nature of the function performed, not the identity of the actor who performed it." *Cooper v. Parrish*, 203 F.3d 937, 944 (6th Cir. 2000) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)).  The functional approach asks whether the conduct was "undertaken in connection with one's duties in functioning as a prosecutor." *Skinner*, 463 F.3d at 525 (brackets and internal quotation marks omitted). When performing functions that are "intimately associated with the judicial phase of the criminal process," prosecutors are absolutely immune from civil suits. *Imbler*, 424 U.S. at 430.  On the other hand, functions which are "investigative" or

"administrative" are more removed from the judicial process, and therefore the prosecutor would only be protected by qualified immunity.  *Burns v. Reed,* 500 U.S. 478, 486 (1991).

Thus, "[t]he analytical key to prosecutorial immunity" is "whether the actions in question are those of an advocate."  *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000).  Whether the prosecutor has an improper motive, acts in bad faith, or even acts in an unquestionably illegal manner is irrelevant.  *Cady v. Arenac County*, 574 F.3d 334, 341 (6th Cir. 2009); *see also Imbler*, 424 U.S. at 431 & n.34 (holding that a prosecutor is still immune, even after presenting false evidence at trial); *Beckett v. Ford*, 384 Fed. Appx 435, 452 (6th Cir. 2010) (finding a prosecutor who threatened witnesses to be immune).  City attorneys, such as Defendant Huber herein, are covered by the absolute immunity doctrine.  *See Shoultes v. Laidlaw*, 886 F.2d 114, 118 (6th Cir. 1989); *Red Zone 12 LLC v. City of Columbus*, 758 Fed. Appx. 508, 513 (6th Cir. 2019).

Here, the Court finds that Defendant Huber is shielded by absolute prosecutorial immunity. The Amended Complaint alleges that Huber was responsible for "facilitating and authorizing the violation of" Ms. Peroli's constitutional rights because he "advised Sgt. Kiousis that he [i.e., Kousis] was 'authorized' to file a criminal complaint and affidavit under Ohio Revised Code § 2921.15(B) against Joette Peroli as a result of his review of the incident reports and citizen complaint submitted to him by Sgt. Kiousis."  (Doc. No. 4 at ¶¶ 10, 58.)  Plaintiffs further allege that "the City of Medina and Huber actively prosecuted Joette Peroli based upon the warrant secured by the false criminal complaint and affidavit of Kiousis."  (*Id.* at ¶ 123.)

Based on the above, the Court finds that Plaintiffs' allegations about Defendant Huber's conduct all center around his initiation and prosecution of the criminal charges against Ms. Peroli. Although Plaintiffs claim that Huber unjustifiably pursued the charges without legal justification, the

Sixth Circuit has repeatedly held that "the initiation and prosecution of a lawsuit on behalf of the government fall squarely within prosecutorial functions" that are protected by absolute immunity. *Red Zone LLC*., 758 Fed. Appx at 514 (citing *Imbler*, 424 U.S. at 431.)  *See also Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012) (finding that "a prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity").  This protection may also extend to "actions that are 'preliminary to the initiation of a prosecution' and 'apart from the courtroom.'"  *Red Zone LLC*, 758 Fed. Appx at 514 (citing *Imbler* at 431 n.33).[10]

In so finding, the Court rejects Plaintiffs' argument that Huber's conduct is not protected by absolute immunity because it is merely administrative in nature.  Plaintiffs' argument is directly inconsistent with the allegations in the Amended Complaint, which allege that Huber (1) facilitated and authorized the filing of the criminal complaint based on his legal review of Ms. Peroli's citizen

---

[10] The Amended Complaint also alleges that Defendant Huber gave legal advice to the County concerning the application of Ohio Rev. Code § 2921.15 to Ms. Peroli.  (Doc. No. 4 at ¶¶ 64, 65.)  The Supreme Court has held that, under certain circumstances, the provision of "legal advice" by a prosecutor may not be shielded by absolute prosecutorial immunity. *See Burns v. Reed*, 500 U.S. 478 (1991); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).  Here, the Court finds that Plaintiffs waived any such argument by repeatedly insisting in their briefing that Huber did **not** provide legal advice to the County with respect to Ms. Peroli.  (Doc. No. 21 at p. 4.)  However, even if the Court were to consider this argument, it would be rejected.  As alleged in the Amended Complaint, Huber's "legal advice" consisted of determining (and advising Sergeant Kiousis) that the County was authorized to file a criminal complaint against Ms. Peroli based on his conclusion, after reviewing the file, that Ms. Peroli's conduct violated state law.  (Doc. No. 4 at ¶¶ 58, 64, 65.)  The Court finds that Huber's alleged conduct is intimately associated with the judicial process because it directly relates to the decision to initiate a criminal complaint against Ms. Peroli.  In this regard, the instant case is materially different from *Burns*, in which the Supreme Court found that absolute immunity did not extend to a prosecutor's advice to police officers regarding the propriety of hypnotizing a suspect during the investigatory phase of the case. *Burns*, 500 U.S. at 492-494.  Likewise, the instant action is distinguishable from *Buckley*, in which the Court found that absolute immunity did not extend to a prosecutor's investigatory actions (prior to the establishment of probable cause) in determining whether a bootprint at the scene of the crime had been made by the defendant's foot. *Buckley*, 509 U.S. at 274-276.  In that case, the Supreme Court noted that "[w]here the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them [i.e., qualified immunity] is also the same." *Id.* at 276.  Here, the Amended Complaint does not allege that Huber's actions were investigatory in nature.  Rather, the Court finds that Huber's alleged conduct involved the decision to initiate prosecution (i.e., to authorize the filing of a criminal complaint), which falls squarely within the protections of absolute immunity. *See e.g., Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997) ("A prosecutor's decision to file a criminal complaint and seek an arrest warrant ... fall[s] squarely within the aegis of absolute prosecutorial immunity.").

complaint and Ohio Rev. Code § 2921.15; and (2) "actively prosecuted" Ms. Peroli.  (Doc. No. 4 at ¶¶ 10, 58, 123.)  Indeed, Plaintiffs not only fail to allege that Huber's conduct was "administrative" in nature but, in fact, allege the opposite.  Thus, the Court finds that Plaintiffs cannot now rely on this theory in opposing Defendant Huber's Motion.

In sum, the Court finds that the challenged actions of Defendant Huber were all intimately associated with the judicial phase of Ms. Peroli's prosecution.  The Amended Complaint contains no facts which indicate that Defendant Huber participated in any kind of activity that might fall outside of his role as an advocate in initiating and prosecuting the state's case against Ms. Peroli. Consequently, Defendant Huber is entitled to absolute immunity with respect to Plaintiffs' § 1983 individual capacity claims.

### 2.  Monell Claims against the Defendant City of Medina

In Count I of the Amended Complaint, Plaintiffs allege that the "City of Medina failed in its duty to properly train, monitor, and supervise Huber."  (Doc. No. 4 at ¶ 125.)  Plaintiffs assert that "the actions of Huber and the City of Medina violated Plaintiffs' right to be free from retaliation for filing a citizen complaint, and their right to be secure in their persons, their home and free from unreasonable search and seizure."  (*Id*. at ¶ 130.) They further claim that "the actions of the City of Medina and Huber . . . were deliberate intentional violations of 42 U.S.C. § 1983 and the clearly established Constitutional Rights of the Plaintiffs, as guaranteed by the 1st, 4th, and 14th Amendments to the United States Constitution."  (*Id*. at ¶ 127.)  Lastly, Plaintiffs claim that the actions of the City and Huber proximately caused Plaintiffs' injuries, including but not limited to the exacerbation of her PTSD.  (*Id.* at ¶ 131.)  Defendant City of Medina is also named in Plaintiffs' conspiracy,

negligent/intentional infliction of emotional distress, false arrest, malicious prosecution, and loss of consortium claims set forth in Counts VI through X of the Amended Complaint.

Defendant City of Medina argues that it is entitled to judgment in its favor with respect to Plaintiffs' Monell claims because the Amended Complaint fails to sufficiently plead the existence of a policy or custom of the City that was the "driving force" behind Plaintiffs' injuries.  (Doc. No. 14 at p. 9-16.)  The City first argues that Defendant Huber was acting as an agent of the State of Ohio when he initiated criminal proceedings against Ms. Peroli and, therefore, his decision to do so was not a policy or custom attributable to the City.  (*Id*. at pp. 10-11.)  The City then argues that Plaintiffs' failure to train claim fails because "the plaintiffs have failed to assert any claims that the City of Medina had any direct knowledge of this alleged failed training or that the potential [for constitutional violations] was sufficiently obvious."  (*Id.* at p. 13.)  The City further asserts that "a prosecutor merely making an error during research is not sufficient to support a claim against the City of Medina for being 'deliberately indifferent' for not having specific training of its prosecutors on research."  (*Id.* at p. 15.)

In response, Plaintiffs assert that "the Amended Complaint plainly alleges that the City of Medina . . . negligently hired, trained and/or supervised Huber, and that the City has a policy, custom, or practice of hiring, training, or supervising prosecutors who are indifferent to the civil rights of the citizenry."  (Doc. No. 21 at p. 10.)  Plaintiffs argue, summarily, that their Monell claims against the City survive because they have "clearly alleged that Huber's intentional, deliberate and indifferent conduct violated O.R.C. 2921.15 and Plaintiff's 1st, 4th, and 14th amendment rights."  (*Id.*)

In their Reply Brief, Defendant argues that Plaintiffs' Monell claims fail because the Amended Complaint fails to set forth a clear policy or custom of the City that accounts for the alleged

failure to train, nor does it identify specifically what the City should have done differently to train its prosecutors.  (Doc. No. 22 at p. 3-4.)  Defendant asserts that, based on established Supreme Court and Sixth Circuit precedent, "[a] simple research error may not serve as the basis for a failure to train claim."  (*Id*. at p. 4.)

It is well established that a municipal entity may not be sued for injuries inflicted solely by its employees or agents under § 1983.  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978).  *See also Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015); *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014); *Heyerman v. County of Calhoun*, 680 F.3d 642 (6th Cir. 2012).  Rather, a plaintiff may only hold a municipal entity liable under § 1983 for the entity's own wrongdoing.  *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) ("Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*.") (citing *Monell*, 436 U.S. at 692–94).  Or, as the Sixth Circuit explained, "a municipality is liable under § 1983 only where, 'through its deliberate conduct,' it was 'the 'moving force' behind the injury alleged.'"  *D'Ambrosio,* 747 F.3d at 388-389 (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (citation omitted).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  To properly allege a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).  *See also D'Ambrosio*, 747 F.3d at 386.  Moreover, a plaintiff must show a "direct

causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred because of the execution of that policy." *Doe v. Claiborne Cnty., Tenn. By. & Through Claiborne Cnty. Bd of Educ*., 103 F.3d 495, 508 (6th Cir. 1996) (internal quotation marks omitted); *see also Baynes*, 799 F.3d at 621; *Fair v. Franklin Cnty., Ohio*, 2000 WL 659418 at *3 (6th Cir. May 11, 2000) ("Monell requires that a plaintiff identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy."); *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993) (same).

Here, Plaintiffs rely solely on the third category of *Monell* claims set forth above; i.e., the existence of a policy of inadequate training or supervision. The Supreme Court has held that, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id*. (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985)). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id*. (citing *Canton v. Ohio*, 489 U.S. 378, 388 (1989) (emphasis added)).

A plaintiff can allege "deliberate indifference" in one of two ways. Ordinarily, it is necessary to show a "pattern of similar constitutional violations by untrained employees" in order to show that policymakers had notice of and "deliberately [chose] a training program that will cause violations of constitutional rights." *Id*. (*citing Bd. of Commissioners of Bryan Cty. v. Brown*, 520 U.S. 397, 409, (1997)). Absent a pattern of violations, a plaintiff may assert a "single incident" theory of liability

28

by alleging that the Constitutional deprivation at issue was the "obvious" consequence of the defendant's failure to provide specific training. *Id.* The latter theory is "rare" and exists "in a narrow range of circumstances." *Id. See also Miller v. Delaware County Commissioners*, 2014 WL 457552 at *8 (S.D. Ohio Feb. 4, 2014).

Here, Plaintiffs do not allege a pattern of similar constitutional violations and, instead, rely on the "single incident" theory of liability; i.e., that the Constitutional deprivation caused by Defendant Huber's conduct was the "obvious" consequence of the City's failure to provide specific training to its prosecutors. For the following reasons, Plaintiffs' failure to train claim against the Defendant City of Medina fails as a matter of law. First, Plaintiffs' claim rests entirely on conclusory allegations and is, therefore, insufficient to state a claim under *Twombly* and *Iqbal, supra*. As set forth *supra*, the allegations set forth in the Amended Complaint regarding the City's failure to train are entirely conclusory. Plaintiffs have failed to sufficiently plead facts that give their Monell claims facial plausibility, rendering the claim that the City has a custom of failing to train its prosecutors no more than a "sheer possibility." *Iqbal,* 556 U.S. at 678.

Moreover, Plaintiffs' allegations do not establish "single incident liability" under *Connick, supra*. In *Connick, supra*, the Supreme Court held that a municipality may not be held liable under § 1983 for failure to train its prosecutors based on a single Brady violation. *Connick*, 563 U.S. at 65. In *Connick*, the assistant district attorney failed to disclose a laboratory report that could have been favorable to the defense. *Id.* at 55-56. The Supreme Court held that recurring constitutional violations are not the "obvious consequence" of failing to provide prosecutors with formal training, since they are professionally equipped and ethically bound to know what Brady entails and to perform legal research when they are uncertain. *Id.* at 66-67. Specifically, the Court explained:

> A district attorney is entitled to rely on prosecutors' professional training and ethical obligations in the absence of specific reason, such as a pattern of violations, to believe that those tools are insufficient to prevent future constitutional violations in "the usual and recurring situations with which [the prosecutors] must deal. [fn omitted]. *Canton*, 489 U.S., at 391, 109 S.Ct. 1197.  A licensed attorney making legal judgments, in his capacity as a prosecutor, about Brady material simply does not present the same "highly predictable" constitutional danger as *Canton*'s untrained [police] officer.

*Id.* at 66-67.

Plaintiffs' claims are materially indistinguishable from those in *Connick*.  Here, the City was entitled to rely on Defendant Huber's presumed abilities to conduct legal research and determine whether a sufficient basis existed to file a criminal complaint against Ms. Peroli.  Plaintiffs have failed to allege facts to support the inference that, absent additional specified training, it was highly predictable that Defendant Huber would fail in these tasks in a manner that would cause a constitutional violation.  For this reason, federal courts have rejected failure to train claims on the basis of a single incident of alleged wrongful conduct of a prosecutor.  *See, e.g., Hatchett v. City of Detroit*, 495 Fed. Appx. 567, 572 (6th Cir. 2012); *Miller,* 2014 WL 457552 at * 9.

In sum, Plaintiffs' Amended Complaint amounts to an attempt to hold the City liable for Huber's failure to properly research the issue of whether Ms. Peroli could be held liable under Ohio Rev. Code § 2921.15.  Standing alone, this is insufficient to state a claim under *Monell*.  As noted above, a municipality may not be held liable under § 1983 on a *respondeat superior* theory—in other words, "solely because it employs a tortfeasor."  *Monell,* 436 U.S. at 691.  Instead, a municipality is liable under § 1983 only where, "through its deliberate conduct," it was "the 'moving force' behind the injury alleged."  *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (citation omitted).  By focusing almost exclusively on the conduct of Defendant Huber, Plaintiffs are improperly attempting to impose liability upon the City simply because the municipality employed one prosecutor who made an

unfortunate error.  *D'Ambrosio*, 747 F.3d at 389.  Because Monell precludes this theory of liability, the Court finds that the City of Medina is entitled to judgment on the pleadings in its favor with respect to Plaintiffs' § 1983 claims.

Accordingly, Plaintiffs' § 1983 claims against the Defendant City of Medina are dismissed. In addition, because claims against a government official in his official capacity are "merely another name for a claim against the municipality," Plaintiffs' § 1983 official capacity claims against Defendant Huber are likewise dismissed. *See Essex v. Cty of Livingston*, 518 Fed. Appx. 351, 354 (6th Cir. 2013).

## IV.    Conclusion

For all the reasons set forth above, Plaintiffs' Motion to Amend (Doc. No. 49) is DENIED. Defendants City of Medina and Gregory Huber's Motion for Judgment on the Pleadings (Doc. No. 14) is GRANTED with respect to Plaintiffs' federal claims.  The Court notes that, in their Motion, Defendants City of Medina and Gregory Huber indicate that they are moving for judgment in their favor with respect to all of Plaintiffs' claims.  However, Defendants' Motion relies exclusively on federal law and fails to articulate any basis for dismissal of Plaintiffs' *state* law claims.  Accordingly, the Court finds Defendants have not properly moved for dismissal of Plaintiffs' state law claims and, thus, Plaintiffs' state law claims against Defendants City of Medina and Huber remain.

**IT IS SO ORDERED.**


                                                 *s/Pamela A. Barker*
                                                PAMELA A. BARKER
Date:  May 12, 2020                             U. S. DISTRICT JUDGE

31